**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------
| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
| Plaintiff, | : Civil Action No. 23-cv-8507 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| NEW RELIC, INC., SUSAN D. ARTHUR, | : **SECURITIES EXCHANGE ACT OF** |
| PALI BHAT, LEWIS CIRNE, HOPE | : **1934** |
| COCHRAN, ANNE DELSANTO, KEVIN | : |
| GALLIGAN, DAVID HENSHALL, RK | : **JURY TRIAL DEMANDED** |
| MAHENDRAN, TAKESHI NUMOTO, and | : |
| WILLIAM STAPLES, | : |
| | : |
| Defendants. | : |
----------------------------------------------------------

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against New Relic, Inc. ("New Relic or the "Company") and the members New Relic's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of New Relic by affiliates of Francisco Partners Management, L.P ("Francisco Partners"), a global investment firm specializing in partnering with technology businesses, and TPG Global, LLC ("TPG"), a global alternative asset management firm.

2.     Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on September 25, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Crewline Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Crewline Buyer, Inc. ("Parent"), will merge with and into New Relic, with New Relic surviving as a wholly-owned subsidiary of Parent, which will be indirectly controlled by Francisco Partners and TPG (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on July 30, 2023 (the "Merger Agreement"), each New Relic stockholder will receive $87.00 in cash (the "Merger Consideration") for each New Relic share owned. Merger Sub and Parent are both affiliates of TPG.

3.     As discussed below, Defendants have asked New Relic's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Qatalyst Partners ("Qatalyst") in support of its fairness opinion.

4.     It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the

material information discussed below is disclosed to New Relic's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of New Relic stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Susan D. Arthur has served as a member of the Board since June 2022.

11. Individual Defendant Pali Bhat has served as a member of the Board since June 2022.

12. Individual Defendant Lewis Cirne has served as a member of the Board since February 2008 and is the Founder of the Company and Executive Chairman of the Board.

13. Individual Defendant Hope Cochran has served as a member of the Board since May 2018.

14. Individual Defendant Anne DelSanto has served as a member of the Board since August 2020.

15. Individual Defendant Kevin Galligan has served as a member of the Board since June 2022.

16. Individual Defendant David Henshall has served as a member of the Board since August 2020.

17. Individual Defendant RK Mahendran has served as a member of the Board since June 2021.

18. Individual Defendant Takeshi Numoto has served as a member of the Board since December 2021.

19. Individual Defendant William Staples has served as a member of the Board since July 2021 and is the Company's Chief Executive Officer.

20. Defendant New Relic is a company that is incorporated pursuant to the laws of the State of Delaware and maintains its principal offices at 188 Spear Street, Suite 1000, San Francisco, California 94105. The Company's stock trades on the New York Stock Exchange under the symbol "NEWR."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.     The Proposed Transaction**

23.     New Relic, a software-as-a-service company, delivers a software platform for customers to collect telemetry data and derive insights from that data in a unified front-end application. It offers a suite of products on its open and extensible cloud-based platform, which enables users to collect, store, and analyze telemetry data. The Company's platform also provides New Relic Instant Observability, an open-source ecosystem of quickstarts that delivers pre-built integrations, dashboards, and alerts for approximately 450 technologies and frameworks; and supports custom app development through common open-source frameworks, a library of existing applications, and a development environment. It sells its products through direct sales organizations, and online and offline sales in the United States and internationally. New Relic was founded in 2007 and is headquartered in San Francisco, California.

24.     On July 31, 2023, the Company announced the Proposed Transaction:

> New Relic (NYSE: NEWR), the all-in-one observability platform for every engineer, today announced that it has entered into a definitive agreement to be acquired by Francisco Partners, a leading global investment firm that specializes in partnering with technology businesses, and TPG, a leading global alternative asset management firm, for $87.00 per share in cash. The all-cash transaction values New Relic at an equity valuation of approximately $6.5 billion.
>
> The purchase price represents a premium of approximately 26% to New Relic's 30-day volume-weighted average closing price ending on July 28, 2023, and approximately a 30% premium to New Relic's last-twelve-months volume-weighted average closing price ending on July 28, 2023. Upon completion of the transaction, New Relic will become a private company with enhanced flexibility to continue investing in its leading observability platform and meeting the data and efficiency needs of its customers.
>
> Hope Cochran, Lead Independent Director of the New Relic Board, said, "We are pleased to have reached this agreement with Francisco

Partners and TPG, which delivers significant, immediate value to shareholders. This transaction is the result of a comprehensive process that included engagement with both financial and strategic parties, led by a transaction committee that included representatives of two of our largest public shareholders. The Board is unanimous in its belief that today's transaction appropriately reflects the Company's innovative and strong business while maximizing shareholder value, and I am immensely proud to have worked alongside New Relic's outstanding management team and my fellow Directors to transform New Relic at this pivotal time."

Lew Cirne, Founder and Executive Chairman of the New Relic Board, said, "Ever since our founding over 15 years ago, New Relic has created and delivered groundbreaking innovations, with a maniacal focus on delivering a leading observability platform to help our customers deliver better software faster. We are pleased to partner with Francisco Partners and TPG, who are committed to continuing to build upon New Relic's strong foundation and achieve its full potential."

Bill Staples, CEO of New Relic, said, "New Relic has made significant progress on its consumption business transition and, together with Francisco Partners and TPG, we will have the resources and flexibility to not only complete the final chapter of this transition, but also accelerate our strategy and provide customers with a standardized data-driven practice that any company can benefit from. I am proud of all that the team at New Relic has achieved, and I thank each of our employees for executing in a dynamic market and contributing to our continued success."

"We've always admired New Relic's best-in-class technology platform and New Relic's continued commitment to provide its customers with a product that continually exceeds expectations," said Dipanjan "DJ" Deb, co-founder & CEO of Francisco Partners.

"We continue to see tremendous opportunity for New Relic given their unique position in an evolving industry, and as a private company we believe they will achieve their full potential and optimize observability," said Brian Decker and Evan Daar, Partners at Francisco Partners.

"As technology continues to become more feature rich and AI-enabled, the need for visibility is only increasing," said Nehal Raj, Co-Managing Partner of TPG Capital. "New Relic is a pioneer in the observability market, providing developers and engineers with a unified platform to proactively monitor and manage mission critical applications."

"Digital infrastructure management is a key thematic focus area for TPG, and we're excited to partner with New Relic to grow the company's customer relationships and continue enhancing its product capabilities," continued TPG's Art Heidrich. TPG will invest in New Relic through TPG Capital, the firm's U.S. and European late-stage private equity platform.

"We have appreciated the partnership with New Relic's directors and management team over the past few years as the company has executed its business model transformation and achieved profitable growth. We enthusiastically support this transaction, which we firmly believe represents the best outcome for shareholders," said directors RK Mahendran, Partner at HMI Capital Management, and Kevin Galligan, Partner at JANA Partners.

**Approvals and Timing**

The transaction was approved by the New Relic Board of Directors. New Relic shareholders Lew Cirne, JANA Partners LLC, and HMI Capital Management L.P., representing approximately 20% of New Relic's outstanding shares, have signed voting agreements in support of the transaction. As part of this transaction, Mr. Cirne will be rolling over approximately 40% of his beneficial shareholdings.

The transaction is expected to close in late 2023 or early 2024, subject to the satisfaction of customary closing conditions and certain regulatory items, including the approval of New Relic's shareholders and expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976. The transaction is not subject to a financing condition. Upon completion of the transaction, New Relic common stock will no longer be listed on any public market.

Under the terms of the agreement, New Relic may solicit alternative acquisition proposals from third parties during a 45-day "go-shop" period following the date of execution of the merger agreement. The New Relic Board of Directors will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurances that the "go-shop" will result in a superior proposal. New Relic does not intend to disclose developments related to the solicitation process unless it determines such disclosure is appropriate or is otherwise required.

*  *  *

**Advisors**

> Qatalyst Partners is serving as financial advisor to New Relic, and Latham & Watkins LLP is acting as legal counsel.
>
> Morgan Stanley & Co. LLC is acting as lead financial advisor to Francisco Partners and TPG. Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, and Moelis & Company are also advising the firms. Davis Polk & Wardwell LLP, Paul Hastings LLP, and Kirkland & Ellis LLP are acting as legal counsel to Francisco Partners and TPG. Freshfields Bruckhaus Deringer US LLP is acting as legal counsel to Mr. Cirne.

\* \* \*

25. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that New Relic's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    The Materially Incomplete and Misleading Proxy Statement**

26. On September 25, 2023, New Relic filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

27. The Proxy Statement fails to provide material information concerning financial projections by New Relic management and relied upon by Qatalyst in its analyses. The Proxy

Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts in April and July 2023 (collectively, the "Company Projections") and provided them to the Board and Qatalyst with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that New Relic management provided to the Board and Qatalyst. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28. For the Company Projections, the Proxy Statement fails to disclose line items used to calculate the following metrics: Revenue, Gross Profit/(Loss), and Operating Income/(Loss).

29. The Proxy Statement also fails to disclose the unlevered free cash flows of the Company, a metric that was used by Qatalyst to conduct its *Discounted Cash Flow Analysis*, and the line items used to calculate this metric.

*Omissions and/or Material Misrepresentations Concerning Qatalyst's Financial Analyses*

30. With respect to Qatalyst's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the unlevered free cash flow of the Company and all underlying line items; (ii) the inputs and assumptions underlying the UFCF multiples of 25.0x to 37.5x; (iii) the inputs and assumptions underlying the discount rates ranging from 11.5% to 14.0%; (iv) the weighted cost of capital of the Company; (v) the terminal value of the Company; (vi) implied net present value of estimated federal tax savings due to its net operating losses for the fiscal years 2028 and beyond;

(vii) the Company's net cash as of June 30, 2023; (viii) the Company's fully diluted shares outstanding as of July 26, 2023; (ix) the Company's redeemable non-controlling interest in New Relic K.K. (the Company's Japanese joint venture), as of June 30, 2023.

31. With respect to Qatalyst's *Selected Companies Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for the companies selected by Qatalyst for the analysis; and (ii) the inputs and assumptions underlying the selection and application of the ranges of CY2024 revenue multiples of 3.5x to 6.0x and the ranges of CY2024E EBITDA multiples of 20.0x to 30.0x.

32. With respect to Qatalyst's *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for the transactions selected by Qatalyst for the analysis; and (ii) the inputs and assumptions underlying the selection and application of the range of NTM revenue multiples of 4.0x to 8.0x and NTM EBITDA multiples of 20.0x to 35.0x.

33. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

34. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

36. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

37. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

38. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do

carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

39. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. The Individual Defendants acted as controlling persons of New Relic within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of New Relic, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of New Relic, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of New Relic, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

44. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

45. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

47. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 27, 2023                    **MELWANI & CHAN LLP**

                                            By: */s/ Gloria Kui Melwani*
                                                Gloria Kui Melwani (GM5661)
                                                1180 Avenue of the Americas, 8th Fl.
                                                New York, NY 10036
                                                Telephone: (212) 382-4620
                                                Email: gloria@melwanichan.com

                                                *Attorneys for Plaintiff*